## In re CONGDON.

(District Court, D. Minnesota, Sixth Division. January 4, 1904.)

1. BANKRUPTCY — GENERAL ASSIGNMENT — ALLOWANCE FOR SERVICES OF ASSIGNEE.

A general assignment, procured from an insolvent by the attorney for the assignee, which resulted in no advantage to the estate, but rather in detriment, is, not only in law but in fact, a fraud on the bankruptcy law, and no allowance will be made by the court of bankruptcy to the assignee for services rendered by himself or his attorney.

In Bankruptcy. On certificate from referee.
The following is the referee's certificate:

I, Ole J. Vaule, the referee in bankruptcy in charge of this proceeding, do certify as follows:

November 20, 1903, the above-named Darius H. Congdon was adjudicated bankrupt, and December 5, 1903, Thomas P. Jumper was appointed trustee of his estate in bankruptcy. October 13, 1903, the bankrupt made to the said Thomas P. Jumper a general assignment of all his property for the benefit of all his creditors, under what might probably be called a common-law deed of assignment. December 5, 1903, Thomas P. Jumper filed his account as assignee under said deed, and asked that he be credited with the following items:

| | |
|---|---|
| Cash paid for insurance.......................................... | $70 00 |
| Cash paid for rent of store..................................... | 40 00 |
| Attorney fees due Morphy, Ewing & Bradford, for services rendered | 85 00 |
| Personal services ............................................. | 25 00 |

By an order of December 8, 1903, I allowed the items of $70 paid for insurance and $40 paid for store rent, but disallowed the items of $85 attorney fees and $25 for personal services, and Thomas P. Jumper, being aggrieved thereby, filed his petition December 21, 1903, for the review of said order by the judge.

The facts leading up to and connected with the assignment are as follows: Shortly prior to October 31, 1903, the bankrupt, being financially embarrassed, had made arrangements with his attorney, Henry Funkley, to go through bankruptcy, and the only or main reason why his petition in bankruptcy had not been filed before this date was that the attorney had not had time to make out the necessary papers. On the 13th of October, 1903, John M. Bradford, one of the attorneys of Thomas P. Jumper, came to the store of the bankrupt, at Blackduck, and requested the bankrupt to give a deed of assignment. The bankrupt told him he had decided to go through bankruptcy, but Mr. Bradford insisted that it was much better for the bankrupt to make an assignment, that

the assignee would leave the bankrupt in possession of the store at a salary of $50 or $60 per month, and that the creditors would furnish him with new goods, as they might be needed, and extend the time of payment. On the strength of these representations the deed of assignment was obtained. The bankrupt was in possession of the store, as he had been before, but the new goods that were promised were not forthcoming, and all that Mr. Jumper did as assignee was to take out a policy of insurance, pay a month's store rent, and write the bankrupt a few letters for money.

It is needless to say that a retail store of general merchandise cannot be kept going in the regular course of trade unless the stock is from time to time replenished. Mr. Jumper is the credit man of George R. Newell & Co., and there is no question but that he could have supplied the bankrupt with the necessary goods, had he been so disposed. The agreement to leave the bankrupt in the possession and control of the business at a salary, and to furnish him with new goods, seems to me, under the circumstances of the case, to be so unbusinesslike and unreasonable that it could never have been intended to be kept, but that it was simply used to induce the bankrupt to make the deed of assignment. The deed itself is also peculiar. It provides that the assignee shall not be liable for "any wrongful acts of any agent by him appointed to carry out said trust." He does everything in this line through agents. He has the selection of them, and, if he is not to be liable for their misdeeds, the creditors have poor protection. While it does not appear how soon the petition in bankruptcy would have been filed, had not the assignee interfered, it is apparent that on account of this interference much valuable time has been lost to this estate. Assignments have generally been considered frauds on the bankruptcy law, and for that reason no compensation has been allowed either the assignee or his attorney for their services; the interests of both being in conflict with the provisions of the bankruptcy law. Collier on Bankruptcy (4th Ed.) 464; In re Gutwillig, 1 Am. Bankr. Rep. 78, 90 Fed. 475. But see Randolph v. Scruggs, 10 Am. Bankr. Rep. 1, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165. However, the assignee has quite generally been reimbursed for actual expenses wisely and necessarily incurred for the benefit of the estate, where such reimbursement would not result in duplication of charges. But it has also been held that, inasmuch as the assignee must know that his position is in conflict with the scheme and purpose° of the bankruptcy law, he should not be allowed any disbursements incurred by him prior to the filing of the petition in bankruptcy. In re Gladding Co., 9 Am. Bankr. Rep. 171. The decision by the referee in this case was affirmed by Judge Brown, of New York, and the case is now on appeal before the Circuit Court of Appeals. See Summers v. Abbott, 10 Am. Bankr. Rep. 254, note, 122 Fed. 36, 58 C. C. A. 352.

In the case last cited, the assignee under a common-law deed of assignment took possession of a large stock of merchandise. He sold part of it at retail and the balance in bulk. He spent about one month in the management of the estate, and realized for the estate in cash over $40,000. Under these circumstances the Circuit Court of Appeals of this circuit held: "While an assignment for the benefit of creditors, executed within the four-months period, is an act of bankruptcy, yet, if honestly made for the purpose of applying all the property of the assignor to the payment of his debts, the assignee, who accepts the trust in good faith and executes it intelligently, successfully, and honestly, is entitled, upon turning over the proceeds of the sale of property to the trustee in bankruptcy or his assignors, to be paid a fair and reasonable compensation for his services and those of his attorneys." But in the case at bar the assignee acted neither "intelligently" nor "successfully," and I fail to see how he could have acted in good faith. In the Summers Case the court said (page 269, 10 Am. Bankr. Rep., page 40, 122 Fed., and page 356, 58 C. C. A.): "To prevent misapprehension, it is proper to say that this case has none of the odious features about it that sometimes crop out in cases where insolvents make deeds of assignment for the professed benefit of their creditors, but which are in fact made to embarrass and defraud them, and where the assignee is a willing instrument of the fraudulent debtors. In such cases, according to an old and well-settled principle, quite independent of the bankrupt act, neither the assignee nor his attorney is entitled to any compensation for their services out of the fraud."

It seems to me, that in the case at bar the assignment was a fraud on the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), not only in law, but in fact. From their relation with Mr. Congdon, the assignee and his attorney must have known that bankruptcy was inevitable, and that they were doing the estate only damage. As between the attorney and his clients, $85 for his expenses and trouble in going to Blackduck is no doubt reasonable; but the amount should, in my opinion, not be saddled upon the estate in bankruptcy simply because the attorney was ingenious enough to procure a deed of assignment. On the strength of the Summers Case the procurement of deeds of assignment has become an industry to be guarded against. I enclose herewith the assignee's account (with a copy of the deed attached), my order thereon, the petition for review, and the evidence.

John M. Bradford, for assignee.

LOCHREN, District Judge. For the reasons stated by the referee, his decision is in all things affirmed.